UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVSION

| | |
|---|---|
| BRIAN LYNGAAS, D.D.S., Plaintiff, vs. J. RECKNER ASSOCIATES, INC. D/B/A RECKNER HEALTHCARE, Defendant. | 2:17-CV-12867-TGB<br><br>ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. 15) |

Plaintiff is a dentist who received what he considered to be a "junk fax" on his office fax machine. He seeks to bring a class action on behalf of similarly besieged dentists. Defendant moves for judgment on the pleadings, claiming that the faxed communication at issue does not constitute an "advertisement" as defined by the Telephone Consumer Protection Act. 47 U.S.C. § 227(b)(1)(C). The Court finds that the fax at issue is an advertisement, and so Defendant's motion will be **DENIED**.

## BACKGROUND

Plaintiff Brian Lyngaas, D.D.S. ("Plaintiff" or "Dr. Lyngaas") is a dentist in Livonia, Michigan. On January 5, 2017, Dr. Lyngaas was unpleasantly surprised to discover the following unsolicited faxed communication on his office fax machine:

(Remainder of page left intentionally blank)



Attention Dentists:

We are currently conducting an online survey with Healthcare Professionals and would like to invite you to participate.

**Length:** 20 minutes
**Topic:** Dental Care
**Compensation for completing this survey:** $30 incentive check
**Study Reference number:** 1768

# http://survey8.reckner.com/20161768

Password: 3317249

Sincerely,
The Reckner Team

To complete this survey, please do not speed through your answers and pay special attention to each rating question and scale as they do change throughout the survey. Speeding through and lack of attention to the questions may cause you to forfeit the compensation noted above.

This invitation will be available only until a predetermined number of responses have been received, so log on soon to take part. As with all marketing research, there are a few questions we would need to ask to ensure that the study is appropriate for you. These preliminary questions will be presented to you online prior to the start of the interview. Please note: you will only receive an incentive for taking the survey once.

For those respondents who complete the entire survey, the incentive check will be sent approximately 4-6 weeks after the study has completed. To view our incentive terms and conditions, please visit this website http://recknerhealthcare.com/payment_policy/.

Please note your responses will be kept confidential and your answers will remain anonymous. Your identity will not be shared or linked to your individual responses with any other party. To view our privacy policy, please visit this website http://survey8.reckner.com/mednet/privacy/.

If you wish to have your fax number removed from our database, please email privacy@reckner.com

3

As can be seen from the face of the fax, Defendant J. Reckner Associates, Inc. d/b/a Reckner Healthcare ("Defendant" or "Reckner Healthcare") sought to enlist Dr. Lyngaas as a survey taker. In exchange for 20 minutes of Dr. Lyngaas's time, Reckner Healthcare offered to pay Dr. Lyngaas $30.

Plaintiff alleges, which for purposes of this motion the Court must presume to be true, that Defendant is a for-profit pharmaceutical marketing research firm (Dkt. 1, ¶ 11). Plaintiff claims that Defendant collects data from medical professionals, and then sells that data to clients in the health care, pharmaceutical, and medical device industries. *Id.* ¶ 12.

Defendant, for its part, does not deny that it sent the fax. Rather, Defendant contends that, as a matter of law, this fax is not an "advertisement" for purposes of the TCPA. For the reasons set out below, I conclude that the fax is an advertisement as defined in the TCPA.

## ANALYSIS

The same standard for deciding a Rule 12(b)(6) motion to dismiss applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). A Rule 12(b)(6) motion tests the sufficiency of the complaint. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Whether a fax constitutes an advertisement under the TCPA is a question of law. *See Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 221 (6th Cir. 2015) ("So were these faxes advertisements? It is a question of law our court has never addressed").[1] The TCPA forbids the use of "any telephone facsimile machine, computer, or

---

[1] Defendant's motion is premised largely on *Sandusky*, and on a recent opinion from this district – *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, No. 16-13777, 2017 WL 783499 (E.D. Mich. March 1, 2017) (Hood, C.J.).

5

other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is defined in the TCPA as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(1). Relying on dictionary definitions to flesh out the meaning of the word "advertising," in *Sandusky*, the Sixth Circuit explained the scope of this term under the TCPA as follows:

> Advertising is "[t]he action of drawing the public's attention to something to promote its sale," Black's Law Dictionary 65 (10th ed. 2014), or "the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public," Webster's Third New International Dictionary 31 (1986). So material that advertises something promotes it to the public as for sale. For another thing, we know what's advertised—here, the "availability or quality of any property, goods, or services"—must be *commercial* in nature. Commercial means "of, in, or relating to commerce"; "from the point of view of profit: having profit as the primary aim." Webster's Third at 456. It's something that relates to "buying and selling." Black's Law Dictionary 270 (6th ed. 1990). So to be an ad, the fax must promote goods or services to be bought or sold, and it should have profit as an aim.

*Sandusky*, 788 F.3d at 221-22 (emphasis in original).

Defendant argues that the plain language of the fax establishes that it is not an advertisement because it does not "advertis[e] the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5). Defendant asserts that the fax does not offer to sell any goods or services to Plaintiff. Thus, according to Defendant, the fax cannot be an advertisement. Defendant's view of *Sandusky's* definition of "advertising" fails to consider the full scope of that decision.

The fax at issue in *Sandusky* was sent by a pharmacy benefit manager to a chiropractor's office. The fax listed "plan-preferred" (i.e., cheaper) prescription medications available in the health plans of the chiropractors' patients. The Sixth Circuit held that these lists (i.e. "formularies") of health-plan preferred medications did not constitute an "advertisement" for purposes of the TCPA. In reaching this result, the Court noted that "the record shows that [the defendant] ha[d] no interest whatsoever in soliciting business from [the plaintiff]. And no record evidence shows that the faxes promote the drugs or services in a commercial sense—they're not sent with hopes to make a profit, directly or indirectly, from [the plaintiff] or the others similarly situated." *Id.* at 222. In other words, since the plaintiff in *Sandusky* was not offering to buy or sell any

7

good or service from the defendant, then the fax was not an advertisement as a matter of law.

Similarly, in *Fulton v. Enclarity*, Chief Judge Hood held that a fax sent to a dentist's office requesting verification of contact information in a LexisNexis database was not an advertisement under the TCPA. As in *Sandusky*, the fax in *Fulton* did not offer to buy or sell anything from the plaintiff. It simply asked the plaintiff to check a "yes" box if their contact information was correct, or a "no" box if it was not correct (if "no," the fax provided spaces to update the dentist's contact information). Of note, the fax in *Fulton* did not offer anything of value (such as a payment) in exchange for the recipient verifying their contact information. Chief Judge Hood, applying *Sandusky*, held that since nothing in the fax was "available to be bought or sold," then the fax was not an advertisement as a matter of law.

The fax in the present case is materially different from the faxes in *Sandusky* and *Fulton*. As quoted above, *Sandusky* recognized that "[a]dvertising is '[t]he action of drawing the public's attention to something to promote its sale,' Black's Law Dictionary 65 (10th ed. 2014), or 'the action of calling something (as a commodity for sale, a service offered

8

or desired) to the attention of the public,' Webster's Third New International Dictionary 31 (1986)." *Sandusky*, 788 F.3d at 221-222. The *Sandusky*-approved definition from Webster's defines advertising in relevant part as: "the action of calling … a service … desired to the attention of the public." The fax in this case calls to the attention of the public the fact that the service of survey-takers is desired by the Defendant. The fax communicates that Defendant is seeking to employ survey-takers. In exchange for this "service," Defendant is willing to pay $30 to dentists for 20 minutes of their time. It is of no import that Defendant is not seeking to "sell" a good or a service to Plaintiff. Defendant is offering to "buy" a service from Plaintiff.[2] This result fully comports with the Sixth Circuit's

---

[2] Defendant's fax is very much like a "want ad." Miriam-Webster defines "want ad" as – "a newspaper advertisement stating that something (such as an employee, employment, or a specified item) is wanted." *See* https://www.merriam-webster.com/dictionary/want%20ad (last visited June 29, 2018). Is the "help wanted" ad reproduced below an advertisement? Common sense, Webster's and *Sandusky* says it is.



9

holding in *Sandusky*. Indeed, *Sandusky* recognized that "to be an ad, the fax must **promote** goods or **services to be bought** or sold, and it should have profit as an aim." *Id.* (emphasis added). The fax promotes services to be bought (survey-takers), and Plaintiff alleges that Defendant sells the data gleaned from this survey to its clients (Dkt. 1, ¶¶ 11-13). Thus, Defendant sent the fax with "profit as an aim."

*Sandusky* counsels that, in order to be an "advertisement" under the TCPA, the fax on its face must propose that the sender and the recipient enter into some kind of commercial relationship, whether that be buying or selling a good or a service. That is exactly what the fax in this case does. Defendant is announcing its desire to hire Plaintiff to take its survey, in exchange for $30. As a matter of law, that's an advertisement.

## CONCLUSION

For the reasons set forth above, Defendant's motion for judgment on the pleadings (Dkt. 15) is **DENIED**.

**SO ORDERED**.

s/Terrence G. Berg  
TERRENCE G. BERG  
UNITED STATES DISTRICT JUDGE

Dated: July 31, 2018

## Certificate of Service

I hereby certify that this Order was electronically submitted on July 31, 2018, using the CM/ECF system, which will send notification to each party.

s/A. Chubb  
Case Manager